[Cite as *State v. Perdue*, 2017-Ohio-8762.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                                       :
                                                   :
    *Plaintiff-Appellee*                          :    Appellate Case No. 27499
                                                   :
v.                                                 :    Trial Court Case No. 2016-CR-1206
                                                   :
IVAN L. PERDUE, JR.                                :    (Criminal Appeal from
                                                   :    Common Pleas Court)
    *Defendant-Appellant*                         :
                                                   :

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of December, 2017.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ALICE B. PETERS, Atty. Reg. No. 0093945, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

DAVID J. FIERST, Atty. Reg. No. 0043954, 2533 Far Hills Avenue, Dayton, Ohio 45419
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Ivan L. Perdue, Jr., appeals from his conviction in the Montgomery County Court of Common Pleas following a no contest plea to having weapons under disability, improperly handling a firearm in a motor vehicle, and possession of heroin. In support of his appeal, Perdue challenges the trial court's decision overruling his motion to suppress evidence that was discovered inside his vehicle while police officers were assisting him with an alleged medical emergency on the roadway. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On May 11, 2016, the Montgomery County Grand Jury returned an indictment charging Perdue with one count of having weapons under disability in violation of R.C. 2923.13(A)(3) and one count of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B). Thereafter, on May 31, 2016, a second indictment was returned charging Perdue with one count of possessing cocaine in an amount equal to or greater than 5 grams, but less than 10 grams, in violation of R.C. 2925.11(A), one count of possessing heroin in an amount equal to or greater than 5 grams, but less than 10 grams, in violation of R.C. 2925.11(A), and one count of possessing drug paraphernalia in violation of R.C. 2925.14(C)(1). The charges arose after police officers discovered the aforementioned drugs and a loaded pistol inside Perdue's vehicle while the officers were assisting Perdue with an alleged medical emergency on the roadway in Moraine, Ohio.

{¶ 3} Following the indictments, on June 14, 2016, Perdue filed a motion to suppress the evidence discovered inside his vehicle. A hearing on the motion was held

on August 19, 2016, during which the State presented testimony from the following Moraine police officers who assisted Perdue at the scene: Officer Matthew Barrie, Officer Justin Eller, and Officer Molly Hayden. Perdue also testified in his defense at the hearing.

{¶ 4} Officer Barrie testified that on the evening of April 17, 2016, a concerned citizen approached him and advised that there was a driver at the intersection of Main Street and Venetian Way who might be intoxicated. The citizen advised Barrie that the driver was sitting in his vehicle at the traffic light, but was not moving when the signal turned green. The citizen further advised that it appeared as if the driver was having "some kind of issue." Hearing Trans. (Aug. 19, 2016), p. 10.

{¶ 5} Following this report, Barrie went to the scene and observed the driver, later identified as Perdue, sitting in his vehicle by himself at the intersection in question. Barrie testified that he approached Perdue's vehicle at the driver's side window, which was rolled down. Upon his approach, Barrie observed that the vehicle was not running and that Perdue appeared lethargic. Specifically, Perdue was fumbling around with his keys and moving very slowly. Barrie testified that when he made contact with Perdue and asked if he was okay, Perdue could not provide a coherent response and that all of Perdue's actions seemed to require a lot of thought. Barrie indicated that Perdue's condition was consistent with some kind of medical issue or a heroin overdose.

{¶ 6} Shortly after Barrie made contact with Perdue, Officer Eller arrived at the scene and approached Perdue's vehicle. Eller testified that upon approaching, he observed Barrie speaking with Perdue at the driver's side window and noticed that Perdue appeared lethargic and was having difficulty communicating. Eller claimed that Barrie

advised him that there appeared to be some kind of drug or alcohol abuse issue.

{¶ 7} Officer Hayden, the last officer to arrive at the scene, testified that she initially observed Barrie and Eller making contact with Perdue at his driver's side window. As she approached the vehicle, Hayden observed Barrie and Eller begin to physically assist Perdue out of his vehicle. Hayden testified that Perdue could not stand and "was completely out of it." Hearing Trans. (Aug. 19, 2016), p. 39. Hayden also testified that it appeared as if Perdue had overdosed on drugs.

{¶ 8} Officer Barrie testified that he did not smell any alcoholic beverage on Perdue's person after he assisted Perdue out of his vehicle. Officer Eller, however, testified that upon assisting Perdue out of his vehicle, he smelled the odor of burnt marijuana emanating from the vehicle and from Perdue's person. Officer Hayden also testified that she smelled the odor of marijuana coming from Perdue's vehicle while Barrie and Eller were assisting Perdue.

{¶ 9} Officer Eller, who identified himself as the officer in charge of the scene, testified that Perdue's vehicle was searched due to the vehicle smelling of marijuana and for purposes of inventorying the contents of the vehicle. Eller testified that an inventory search was necessary because Perdue was in no condition to drive and his vehicle was blocking traffic and needed to be towed from the roadway.

{¶ 10} Barrie and Hayden also testified that Perdue appeared to be in no condition to drive. Hayden further testified that it is the Moraine Police Department's policy to inventory items in a vehicle before the vehicle is towed. Hayden also identified a copy of the police department's tow policy.

{¶ 11} As for the search of Perdue's vehicle, Hayden testified that she conducted

the search while Barrie and Eller tended to Perdue and called for medical assistance. Hayden testified that she began the search by looking inside the vehicle as she walked around to the passenger side. When she reached the passenger side, Hayden searched the vehicle's glove compartment and found a loaded pistol. Barrie and Eller testified that Perdue was handcuffed and placed in custody once the pistol was discovered. Eller testified that Perdue was detained for safety purposes until the officers could investigate the matter further.

{¶ 12} After the pistol was discovered, the search continued and various drugs were discovered inside Perdue's vehicle. Although no marijuana was discovered in the vehicle, Eller discovered a broken marijuana cigarette in Perdue's pants pocket after completing a pat down search.

{¶ 13} There is no dispute that Perdue was taken to the hospital once the medics arrived at the scene. Although the officers believed that Perdue might have been on drugs, Perdue testified that he was suffering from a diabetic episode due to low blood sugar. Purdue claimed that he stopped his vehicle at the traffic light in question and waited to recover from his diabetic episode because he could not continue driving. Perdue testified that he had eaten some candy a few minutes earlier and was waiting for the candy to "kick in." Hearing Trans. (Aug. 19, 2016), p. 48.

{¶ 14} Continuing, Perdue testified that he was incoherent and unable to talk with the officers when they approached him. While Perdue admitted that he was unable to communicate, he nevertheless claimed that he understood everything that was happening during the encounter. Perdue testified that the officers assisted him out of his vehicle and that he was able to stand on his own by leaning up against his vehicle.

Perdue also claimed that after he was out of his vehicle, the officers asked if he was having a medical episode, and that he responded affirmatively by shaking his head "yes." *Id.* at 52.

{¶ 15} Perdue further testified that the officers asked for his license and insurance information, which he claimed he provided by handing over his entire wallet from his back pocket. Perdue then recalled being handcuffed a few minutes later, which he noted was around the same time Officer Hayden was searching his vehicle. Perdue also admitted to marijuana being found in his pants pocket.

{¶ 16} After considering the testimony and evidence submitted by the parties at the suppression hearing, the trial court overruled Perdue's motion to suppress. In overruling the motion, the trial court explained that it had found the officers' testimony credible, and that because the officers detected the odor of marijuana coming from Perdue's vehicle, the officers had probable cause to search every compartment and container inside the vehicle. The trial court also concluded that the inventory search was subsidiary to the probable cause search since the search of the vehicle was permissible regardless of whether the inventory search was authorized.

{¶ 17} Following the trial court's decision overruling the motion to suppress, on February 3, 2017, Perdue pled no contest to having weapons under disability, improperly handling a firearm in a motor vehicle, and possession of heroin. In exchange for his no contest plea, the State agreed to dismiss the remaining charges for possessing cocaine and drug paraphernalia. Thereafter, the trial court found Perdue guilty of the charges for which he pled no contest and sentenced him to 18 months in prison on each count. The trial court ordered the prison terms to be served concurrently for an aggregate prison

sentence of 18 months.

{¶ 18} Perdue now appeals from his conviction, raising a single assignment of error for review.

## Assignment of Error

{¶ 19} Perdue's sole assignment of error is as follows:

THE EVIDENCE USED TO CONVICT APPELLANT WAS OBTAINED AS

OF AN ILLEGAL SEARCH AND SEIZURE AND SHOULD HAVE BEEN

SUPPRESSED.

{¶ 20} Under his single assignment of error, Perdue challenges the trial court's decision overruling his motion to suppress the evidence discovered in his vehicle. Perdue contends that the evidence should have been suppressed because it was discovered as the result of an illegal, warrantless search that violated his Fourth Amendment rights. Perdue does not challenge the officers' initial approach and the investigation as to why he was parked at the traffic light, but only the subsequent search of his vehicle.

{¶ 21} "In ruling on a motion to suppress, the trial court 'assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.' " *State v. Prater*, 2012-Ohio-5105, 984 N.E.2d 36, ¶ 7 (2d Dist.), quoting *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). "As a result, when we review suppression decisions, 'we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law,

without deference to the trial court's conclusion, whether they meet the applicable legal standard.' " *Id.*, quoting *Retherford.*

{¶ 22} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures, and a trial court is required to suppress evidence obtained during an unconstitutional search and seizure. *State v. Davenport*, 2017-Ohio-688, 85 N.E.3d 443, ¶ 16 (2d Dist.), citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Wong Sun v. United States*, 371 U.S. 471, 484-85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to only a few well recognized exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

{¶ 23} One of the exceptions to the warrant requirement is the automobile exception, which "allows police to conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband and exigent circumstances necessitate a search or seizure." *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992), citing *Chambers v. Maroney*, 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). (Other citation omitted.) A vehicle's mobility is the traditional exigency for the automobile exception to the warrant requirement. *Id.,* citing *California v. Carney*, 471 U.S. 386, 393, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). Therefore, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment * * * permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996), citing *Carney* at 393.

**{¶ 24}** "When probable cause is found to exist under the facts and circumstances of a given case, law enforcement officers have the necessary constitutional justification to explore any areas in the vehicle, including all movable containers and packages that may reasonably contain the object of their search." *Davenport* at ¶ 23, citing *State v. Shipp*, 2d Dist. Montgomery No. 24933, 2012-Ohio-6189, ¶ 33 and *State v. Welch*, 18 Ohio St.3d 88, 92, 480 N.E.2d 384 (1985).

**{¶ 25}** " 'The smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search.' " *State v. Chase*, 2d Dist. Montgomery No. 25323, 2013-Ohio-2347, ¶ 23, quoting *State v. Moore*, 90 Ohio St.3d 47, 53, 734 N.E.2d 804 (2000). "There need be no additional factors to corroborate the suspicion of the presence of marijuana." *Moore* at 50. " '[A] law enforcement officer, who is trained and experienced in the detection of marijuana, should not be prohibited from relying on his or her sense of smell to justify probable cause to conduct a search for marijuana.' " *State v. Thompson*, 2d Dist. Montgomery No. 26130, 2014-Ohio-4244, ¶ 40, quoting *Moore* at 51.

**{¶ 26}** In this case, Officer Eller and Officer Hayden testified that they smelled the odor of marijuana emanating from Perdue's vehicle as Perdue was being assisted out of his vehicle. Despite Eller and Hayden's testimony, Perdue argues that the State failed to establish that the officers had probable cause to search his vehicle. Specifically, Perdue claims that the officers' testimony failed to establish that they were sufficiently qualified to recognize the odor of marijuana.

**{¶ 27}** Perdue's argument has no merit because Officer Eller testified that he was familiar with the odor of burnt marijuana through police academy and FTO training. Eller

further claimed that during his training, he found multiple bags of raw marijuana, grow operations, pipes with burnt marijuana, and marijuana cigarettes. As a result, Eller testified that based on his experience finding these items and based on all his other training, he is able to tell the difference between raw and burnt marijuana odors.

{¶ 28} Officer Hayden, on the other hand, generally testified that she encounters drugs two to three times per week in the course of her police duties and that she has been a police officer for just under two years. Although Officer Hayden's testimony regarding her qualifications is sparse and does not specifically address her training and experience with recognizing the odor of marijuana, Officer Eller's testimony clearly indicates that he has been trained and has had experience in detecting the odor of marijuana.

{¶ 29} As a further matter, Perdue never argued in his motion to suppress or at the suppression hearing that the officers were not qualified to recognize the odor of marijuana. The defendant in *State v. Cunningham*, 2d Dist. Montgomery No. 20059, 2004-Ohio-3088 failed to raise the same argument before the trial court and we held that: "Legal issues which are not raised in the trial court may not generally be raised for the first time in the appellate court. The general rule is that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *Id.* at ¶ 26, citing *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. (Other citation omitted.)

{¶ 30} Even if Perdue had raised the issue of the officers' qualifications to recognize the odor of marijuana at the trial level, under the circumstances of this case,

the trial court did not err in failing to suppress the evidence discovered in Perdue's vehicle. Since the trial court found the officers' testimony credible, there is competent, credible evidence in the record supporting the trial court's finding that the officers based their warrantless search of Perdue's vehicle on the smell of marijuana emanating from the vehicle. As previously discussed, the smell of marijuana is, by itself, sufficient to establish probable cause to conduct a warrantless search when it is detected by a person qualified to recognize the odor. *Moore*, 90 Ohio St.3d at 53, 734 N.E.2d 804. Here, Officer Eller testified that he smelled the odor of marijuana coming from Perdue's vehicle, and also testified regarding his training and experience with recognizing the odor of marijuana. As a result, probable cause existed for the warrantless search of Perdue's vehicle. Because there was probable cause to search Perdue's vehicle, the search falls under the automobile exception to the warrant requirement, thus making the evidence obtained during the search admissible.

{¶ 31} In light of the foregoing holding, we need not address the inventory of Perdue's vehicle as an alternative justification for the warrantless search. As noted by the trial court, the inventory search was subsidiary to the probable cause search because regardless of whether the officers had authority to conduct an inventory search, the search was lawful based on Officer Eller detecting the odor of marijuana coming from the vehicle.

{¶ 32} For the foregoing reasons, Perdue's sole assignment of error is overruled.

## Conclusion

{¶ 33} Having overruled Perdue's sole assignment of error, the judgment of the

trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Alice B. Peters
David J. Fierst
Hon. Mary Lynn Wiseman